

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Seawolf Tankers Inc., et al.,

                  Plaintiffs,

-against-

Laurel Shipping LLC, et al.,

                  Defendants.

1:20-cv-05198 (JHR) (SDA)
Member case:
1:20-cv-07246 (JHR) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a request by Freepoint Commodities Singapore Pte Ltd. and Freepoint Commodities LLC (collectively "Freepoint") and Laurel Shipping LLC ("Laurel" and together with Freepoint, "F&L") for the Court to direct Seawolf Tankers Inc. ("Seawolf") to produce a "brief" provided to Seawolf's expert, Anuj Chopra ("Chopra"), with appropriate redactions. (*See* F&L 1/30/24 Ltr., ECF No. 126, at PDF p. 3.) For the reasons set forth below, F&L's request is GRANTED.

**BACKGROUND**

On September 15, 2023, Seawolf served a disclosure of expert testimony for Chopra, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. (F&L 1/30/24 Ltr. at PDF p. 1; *see also* F&L 1/30/24 Ltr., Ex. A, ECF No. 126-1.) The Rule 26(a)(2) disclosure had annexed, as Exhibit A, Chopra's expert report (the "Chopra Report") and, as Exhibit B, a list of the documents and materials that Chopra considered (the "Chopra Materials"). (F&L 1/30/24 Ltr., Ex. A at PDF pp. 3-27.) The Chopra Report states that he was retained as a testifying expert to opine "with respect to Seawolf's exercise of due diligence as viewed under industry custom and practice to

provide and maintain the Vessel during the subject Voyage in compliance with the requirements set forth in the Voyage Charter agreement." (F&L 1/30/24 Ltr., Ex. A, at 2 of 17.)

On December 12, 2023, Chopra's deposition was taken. (F&L 1/30/24 Ltr. at PDF p. 1.) During the deposition, F&L's counsel inquired about the materials that had been provided to Chopra for his consideration in forming his opinion for Seawolf, including the Chopra Materials. (*See id.*) The following colloquy occurred with respect to the Chopra Materials:

> [Counsel for F&L] Q: Who selected this 15-part document designation for your review?
>
> [Chopra] A: So, it's a two-part discussion on this. The first, I was given a brief on the case itself, and the documents, the first set of documents, and then I asked for another set of documents as communication, which were provided to me, and that is how we arrived at this, the full preparing of this report. Remember that this report does go back a ways, and subsequent to submission of this report, I got more information as this -- as this case proceeded further.

(F&L 1/30/24 Ltr., Ex. B, Chopra Dep., ECF No. 126-2, at 17:7-19.)

Chopra's deposition transcript reflects the following regarding questions about the "brief" (hereinafter referred to as the "Disputed Brief"):

> [Counsel for F&L] Q: You said that you received a brief. Please describe for me what that brief was.
>
> [Counsel for Seawolf]: I am going to object to the extent it calls for the disclosure of any attorney work product or attorney-client privilege. You can answer generally without discussing the contents or substance of any material used, or correspondence you had with attorneys, Mr. Chopra.
>
> [Chopra] A: Thank you, Rob. Thank you for that. So it was a general briefing on what the case was about, the terminology, what it was, in that space, you know, what were we dealing with, what was the layout.
>
> [Counsel for F&L] Q: So basically it outlined, I assume, at least, the facts for you, right?

> [Chopra] A: The general guidelines, and then the facts were provided to me in other evidence as I asked, and as more such documents were provided.
>
> . . .
>
> [Counsel for F&L] Q: Capt. Chopra, was there any discussion of the facts in the brief you were provided that you mentioned earlier?
>
> [Chopra] A: It was more a general description, like the name of the company, the name of the vessel, the voyage. The facts were in the attachments and the evidence which was provided. So it was more a description of what -- what we were dealing with as in the larger picture, but --

(Chopra Dep. at 17:25-21:10.) After an exchange of speaking objections and counsel for Seawolf effectively instructing Chopra not to answer any further questions (*see id.* at 21:11-22:11), counsel for F&L reserved his right to raise this matter for the Court and called for the production of the Disputed Brief. (*Id*. at 22:12-21.)

On December 12, 2023 (the same day as the deposition), F&L served a written request for the production of the Disputed Brief. (F&L 1/30/24 Ltr., Ex. C, ECF No. 126-3.) After not receiving a response, on January 22, 2024, F&L followed-up by email with Seawolf and asked when they could expect a response. (F&L 1/30/24 Ltr., Ex. D, ECF No. 126-4, at PDF p. 1.) Again, after not receiving a response, on January 26, 2024, F&L emailed Seawolf and informed it that any responses/objections were "long overdue" and "waived given your failure to provide timely responses." (*Id*.)

On January 29, 2024, Seawolf responded by (1) claiming the Disputed Brief as attorney work product; (2) asserting that any argument regarding the timeliness of Seawolf's objections was unfounded; (3) stating that any communications by and between Chopra and counsel for Seawolf was protected from discovery under Rule 26(b)(4)(C); and (4) asserting that Chopra did not testify at his deposition that the Disputed Brief included facts, "but rather he testified

3

consistently that the facts he considered were provided to him in other evidence and documents he received." (F&L 1/30/24 Ltr., Ex. E, ECF No. 126-5, at PDF pp. 1-2.) F&L disagreed and asked if the parties could meet-and-confer. (*Id.* at PDF p. 1.)

On January 30, 2024, the parties met-and-conferred telephonically. (F&L 1/30/24 Ltr. at PDF p. 3.) Seawolf maintained its position that the entire Disputed Brief was privileged and the parties reached an impasse. (*Id.*) On January 30, 2024, this instant application followed. (*See generally id.*) On February 2, 2024, Seawolf filed an opposition to F&L's letter. (Seawolf 2/2/24 Opp'n Ltr., ECF No. 127.) On February 6, 2024, the Court ordered the parties to appear for a conference to address F&L's letter to take place on February 8, 2024.

On February 6, 2024 and in advance of the conference, the Court ordered Seawolf to produce the Disputed Brief to the Court *ex parte* to be reviewed *in camera*. (2/6/24 Order, ECF No. 129.) On February 7, 2024, in compliance with the Court's Order, Seawolf emailed the Disputed Brief for the Court's review *in camera*. In its cover email, Seawolf stated:

> Pursuant to your Honor's order dated February 6, 2024 (20-cv-05198, Dkt. # 129), please see attached an unredacted copy of the "Brief" that is the subject of Plaintiff's motion (Dkt. # 126). As explained in Seawolf's opposition (Dkt. # 127), the Brief contains Seawolf's counsel's description of the case and mental impressions of the Plaintiffs' allegations related to the Voyage (Brief at pp. 1 – 3 ("Overview of the Voyage")) and the Parties' claims and defenses (id. at 3 – 5 ("Ridgebury's Response to Plaintiffs' Claim of Unseaworthiness"), & 6 – 8 ("Plaintiffs' Claim of Breach of Voyage Charter against Seawolf")).
>
> Seawolf opposes Plaintiffs' motion on the basis that the entire Brief is attorney work product protected from discovery pursuant to Rule 26(b)(4)(C). However, to the extent your Honor considers ordering Seawolf to produce the Brief with redactions, Seawolf submits that the sections of the Brief entitled "Ridgebury's Response to Plaintiffs' Claim of Unseaworthiness" and "Plaintiffs' Claim of Breach of Voyage Charter against Seawolf" directly concerns counsel's theories and analysis of the claims asserted and must be redacted.

(Seawolf 2/7/24 Email, ECF No. 130.)

Based on the Court's *in camera* review, the Disputed Brief consists of an 8-page Word document. On the first page, it is marked "PRIVILEGED AND CONFIDENTIAL: ATTORNEY WORK PRODUCT" and is addressed "to" Chopra, "from" "Holland & Knight, on behalf of Seawolf Tankers Inc." with the subject line "Instructions for Initial Advice in [the consolidated case names]." (Disputed Br. at 1.) The Disputed Brief contains four parts: (1) the introductory paragraphs (*id.* at 1-2), (2) the "Overview of the Voyage" (*id.* at 2-3), (3) "Ridgebury's Response to Plaintiffs' Claims of Unseaworthiness" (*id.* at 3-5), and (4) "Plaintiff's Claim of Breach of Voyage Charter Against Seawolf" (*id.* at 6-8). The Disputed Brief refers to various deposition testimony, inspection reports, and emails as exhibits, presumably annexed to or accompanying the Disputed Brief when it was relayed to Chopra. (*See generally id.* at 1-3.) There are portions of the Disputed Brief that contain Seawolf's counsel's impressions about the case, litigation strategy, and strengths and weaknesses about the various parties' respective positions. (*See id.* at 6-8.)

On February 8, 2024, the Court heard oral argument regarding F&L's letter at the conference.

## LEGAL STANDARDS

**I.     Work Product Doctrine**

In federal courts, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" taking into account a number of considerations. Fed. R. Civ. P. 26(b)(1). However, Rule 26 of the Federal Rules of Civil Procedure "provides for several exceptions to the Federal Rules' policy of allowing liberal discovery, including the work-product doctrine." *SEC v. Rio Tinto PLC*, No. 17-CV-07994

5

(AT) (DF), 2021 WL 2186433, at *3 (S.D.N.Y. May 28, 2021). "A claim of work-product has three elements: [t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *BNP Paribas v. Bank of N.Y. Trust Co., N.A.*, No. 11-CV-00350 (PGG) (HBP), 2013 WL 2434686, at *3 (S.D.N.Y. June 5, 2013) (quotation marks and citations omitted). An absolute privilege applies to "opinion work product"; a qualified privilege applies to "fact work product." *Am. Oversight v. U.S. Dep't of Justice*, 45 F.4th 579, 591 (2d Cir. 2022).

Parties can waive work product protection for work product that is of a factual nature. Thus, for example, "courts have held that 'furnishing work-product of a factual nature to a testifying expert constitutes implied waiver of work-product protection to the extent that the expert considers the facts or data disclosed in forming [his] opinion.'" *Rio Tinto PLC*, 2021 WL 2186433, at *4 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013) ("*In re MTBE*")). "'[T]he cases [also] make clear' that 'the burden of showing that the expert did not read or review a document lies with the party resisting discovery.'" *Id.* (quoting *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-CV-06124 (JGK) (THK), 2002 WL 15652, at *7-8 (S.D.N.Y. Jan. 7, 2002)).

**II.     Testifying Expert Disclosure Rules**

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to disclose to other parties "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). In relevant part, Rules 702, 703 and 705 of the Federal Rules of Evidence relate to expert testimony, the basis of an expert's opinion testimony and the disclosure of facts or data underlying an expert's opinion, respectively. Fed. R.

6

Evid. 702, 703, 705. Absent a stipulation from the Court, experts disclosed pursuant to Rule 26(a)(2) who are "retained or specifically employed to provide expert testimony in the case" must provide a written report consistent with the requirements outlined in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2)(B). In relevant part, written expert reports must include "the facts or data *considered* by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added). Rule 26(a)(2)(B) was amended in 2010 "'to address concerns about expert discovery.'" *Fialkowski v. Perry*, No. 11-CV-05139, 2012 WL 2527020, at *3 (E.D. Pa. June 29, 2012) (quoting Fed. R. Civ. P. 26, Adv. Comm. Notes, 2010 amend.). The Advisory Committee Notes to the 2010 Amendments are clear that the disclosure of "facts or data"

> is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, [however,] the intention is that "facts or data" be interpreted broadly to require disclosure of ***any material considered*** by the expert, ***from whatever source***, that contains ***factual ingredients***. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

Fed. R. Civ. P. 26, Adv. Comm. Notes, 2010 amend. (emphasis added).

"Further, 'even if the expert avers under oath that he did not actually consider certain materials in forming his opinion, that will not control,' and instead courts apply an 'objective test' that defines 'considered' as any facts or data on the subject matter learned by the expert at any time before rendering h[is] opinion." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 471-72 (S.D.N.Y. 2016) (quoting *Euclid Chemical Co. v. Vector Corrosion Tech., Inc.*, No. 05-CV-00080 (WHB), 2007 WL 1560277, at *3-4 (N.D. Ohio May 29, 2007)); *see also id.* (quoting *United States v. Dish Network, L.L.C.*, 297 F.R.D. 589, 596 (C.D. Ill. 2013) ("A court should not solely credit the subjective representation of the expert when determining what the expert 'considered.'")).

This "objective test" has defined "considered" to include "anything received, reviewed, read, or authorized by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *Id.* (quoting *Euclid Chemical*, 2007 WL 1560277, at *4) (quotation marks omitted).

The Federal Rules of Civil Procedure protect from disclosure communications by and between a party's attorney and any expert witness who is required to provide a report under Rule 26(a)(2), regardless of the form of communications, with limited exceptions. Fed. R. Civ. P. 26(b)(4)(C). These limited exceptions include, *inter alia*, the "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." *Id*. 26(b)(4)(C)(ii).

## ANALYSIS

Based upon the Court's *in camera* review of the Disputed Brief, the Court finds that it is a document that was prepared in anticipation of litigation by Seawolf's counsel. As such, the Disputed Brief is protected from disclosure, except to the extent that it contains facts or data considered by Chopra in forming his opinions. *See Rio Tinto PLC*, 2021 WL 2186433, at *4; *see also* Fed. R. Civ. P. 26(b)(4)(C)(ii). Seawolf argues that Chopra did not consider the Disputed Brief in forming his opinions and that the Disputed Brief did not contain "facts or data" that he considered. (*See* Seawolf 2/2/24 Opp'n Ltr. at 1.) The Court first addresses whether Chopra "considered" the Disputed Brief and next addresses whether it contains "facts or data."

### I. Chopra "Considered" The Disputed Brief

Chopra testified that the Disputed Brief was a "general briefing" that discussed "what the case was about, the terminology, what it was . . . what was the layout" and that it contained a

8

"general description, like the name of the company, the name of the vessel, the voyage." (Chopra Dep. at 17:25-21:10.) Chopra believed the "facts were in the attachments and the evidence which was provided." (*Id.*)

Despite Chopra's subjective belief, the Court is charged with objectively assessing whether Chopra considered the Disputed Brief. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d at 470-72. An objective assessment of what an expert "considered" requires the Court to scrutinize whether the expert "received, reviewed, read, or authorized by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *Id.* Thus, the Court must analyze (1) what the expert was retained for, (2) what information was included in the Disputed Brief, and (3) whether, objectively, the Court finds that an expert would have considered that information in forming his opinion. *See id.*

Chopra was retained to assess Seawolf's exercise of due diligence viewed under industry custom, which assuredly would have required Chopra to familiarize himself with the underlying voyage. Chopra testified that he was "given a brief on the case itself" (Chopra Dep. at 17:7-19.) Based on the Court's *in camera* review of the Disputed Brief, this is exactly the type of information it contains. Thus, the Court finds that Chopra "considered" the Disputed Brief in forming his opinions. *See Inselberg Van Etten v. Wells Fargo Bank, N.A.*, No. 18-CV-11638 (MCA) (JSA), 2022 WL 20508944, at *4 (D.N.J. Sept. 1, 2022) (finding that an expert's "review of the facts and/or data provided by [] counsel was sufficient for [him] to have 'considered' them in forming [his] opinion, regardless of whether [he] actually relied on such facts and data in formulating [his] opinion.").

**II.     The Disputed Brief Contains "Facts" And/Or "Data"**

Based upon the Court's *in camera* review of the Disputed Brief, it is clear that significant portions of the Disputed Brief are factual in nature. The first two pages of the Disputed Brief provide a factual overview of the voyage at issue. The Disputed Brief also contains certain data. Thus, the Court finds that the first two pages of the Disputed Brief, plus the carryover paragraph and the first four complete paragraphs on page 3, should be produced by Seawolf.

**III.    Permissible Redactions**

The sections of the Disputed Brief entitled "Ridgebury's Response to Plaintiffs' Claim of Unseaworthiness" and "Plaintiffs' Claim of Breach of Voyage Charter against Seawolf," on pages 3 through 8, however, need not be produced, and may be redacted. Those sections reflect counsel's theories and analysis of the claims and are protected from disclosure as opinion work product, with one *proviso*.

Embedded in the two sections noted immediately above are certain facts and data. F&L is entitled to know that Chopra considered those embedded facts and data. Thus, as discussed during the Court conference that occurred on February 8, 2024 (*see* 2/8/24 ECF Minute Entry), Seawolf shall confirm that such embedded facts and data are contained either in (i) the Chopra Materials that Chopra considered (*see* F&L 1/30/24 Ltr., Ex. A at PDF p. 23), or (ii) the Dyson Report (as discussed during the conference) and/or its exhibits. If they are contained in either of those two places, then such facts and data may be redacted. However, to the extent that such embedded facts and/or data are not contained in either of these two places, then such facts and/or data shall remain unredacted.

## CONCLUSION

For the foregoing reasons, F&L's letter motion is GRANTED. No later than Friday, February 16, 2024, Seawolf shall produce the Disputed Brief to F&L, with the redactions noted above.

**SO ORDERED.**

Dated:   New York, New York
         February 9, 2024

_____
STEWART D. AARON
United States Magistrate Judge